# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN MARY CARRERAS,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 16-01728-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.
## INTRODUCTION

Kathleen Mary Carreras ("Plaintiff") challenges the Commissioner's[1] denial of her applications for a period of disability and disability insurance benefits ("SSI") following an administrative law judge's ("ALJ") decision that she had not been under a disability, as defined in the Social Security Act.

In her disability application, Plaintiff alleged disability based on a lower spine issue and Post-Traumatic Stress Disorder ("PTSD"). At step two of the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

familiar five-step sequential evaluation process used to evaluate claims of disability, the ALJ determined that Plaintiff's lower spine issue qualified as a severe impairment, but that Plaintiff's PTSD was not severe. Plaintiff challenges the ALJ's non-severity finding. For the reasons stated below, the Commissioner's decision is REVERSED.

## II.

## FACTUAL BACKGROUND

Plaintiff's PTSD diagnosis stemmed from an incident that occurred in 2011. (*See generally* Administrative Record ("AR") 249-70.) The medical evidence contained in administrative record regarding Plaintiff's PTSD consists of treatment records from psychiatrist Dr. Chau Ton-That, DO; the report of consultative examiner Dr. Norma Aguilar; and the evaluation of state agency consultant Dr. Randall J. Garland. The record also includes Plaintiff's hearing testimony regarding her PTSD. The contents of the medical records and opinions of Dr. Aguilar and Dr. Garland are summarized below, along with Plaintiff's hearing testimony.

A. Medical Records Regarding PTSD

*1. Dr. Ton-That's Treatment Notes*

Dr. Ton-That's treatment of Plaintiff's PTSD spanned slightly more than two years, from August 2012 to October 20, 2014. (AR 292-304, 317-26.) Dr. Ton-That diagnosed Plaintiff with PTSD in August 2012, arising from a traumatic event experienced by Plaintiff in October 2011. (*Id.* at 302-03.)

Dr. Ton-That's August 2012 treatment notes reported that Plaintiff appeared anxious and mildly depressed, for which Dr. Ton-That prescribed Zoloft. (AR 303.) When Dr. Ton-That saw Plaintiff next, in December 2012, Plaintiff complained of nightmares and showed slight treatment response. (*Id.* at 301.) Plaintiff reported that her PTSD symptoms were occurring a few times per week and that she still experienced fearfulness at times. (*Id.*) Dr. Ton-That's December

2

2012 exam also reported that Plaintiff's demeanor was glum and that she showed signs of mild depression. (*Id*.) Dr. Ton-That continued Plaintiff on Zoloft and also prescribed Trazodone. (AR 301.) At her next appointment, in April 2013, Dr. Ton-That noted that Plaintiff missed an appointment and that she went off her medication for two months. (*Id*. at 298). Plaintiff reported that she had been feeling better, but now felt worse and that her PTSD symptoms had increased in frequency. (*Id*.) Dr. Ton-That's examination findings revealed that Plaintiff's demeanor was glum and found signs of anxiety. (*Id*.) Dr. Ton-That prescribed Trazodone and Prozac. (*Id*.)

At Plaintiff's subsequent monthly appointments, from July through January 2014, Dr. Ton-That's treatment notes reported that Plaintiff showed slight or minimal treatment response. (AR 292, 294, 295, 325.) Plaintiff reported that her PTSD symptoms occurred a few times per week and she had recurrent dreams of the traumatic event. (*Id*. at 292-95, 297, 323, 325.) Plaintiff consistently showed signs of mild depression and, on one occasion, moderate depression. (*Id*.) Dr. Ton-That continued Plaintiff on Trazodone and Prozac and also prescribed Vistaril. (*Id*. at 323-26.)

Dr. Ton-That's March 2014 treatment notes reported that Plaintiff showed a slight response to treatment and that Plaintiff reported a decrease in PTSD symptoms. (AR 321-22.) Dr. Ton-That continued Plaintiff on the same medication. (*Id*.) Dr. Ton-That's April 2014 treatment notes reported similar findings and that Plaintiff was continued on the same medication. (*Id*. at 319-20.)

Finally, in October 2014, Dr. Ton-That's treatment notes indicated that Plaintiff had not been to see him since April 2014 and that she reported to be off Zoloft and Trazodone, but continuing to take tramadol. (AR 317.) Plaintiff reported that her symptoms of depression and PTSD had continued as previously described. (*Id*.) As before, Dr. Ton-That's clinical examination found signs of mild depression. (*Id*.) Dr. Ton-That prescribed Trazodone. (*Id*.)

Throughout Dr. Ton-That's treatment notes, he assessed Plaintiff's GAF or AXIS V score as 55.[2] (AR 292-95, 297-98, 300-01, 303, 317, 319, 321, 323, 325.) A GAF score of 55 indicates "moderate difficulty in social or occupational functioning." *Craig*, 659 F. App'x at 382 (citing *Garrison v. Colvin,* 759 F.3d 995, 1003 n.4 (2014)).

*2. Dr. Aguilar's Consultative Psychiatric Examination and Opinion*

Dr. Aguilar performed a psychiatric consultative examination of Plaintiff in December 2013. (AR 310-14.) In preparing her evaluation, Dr. Aguilar did not review any of Plaintiff's medical records because the "medical records [were] not available for review." (*Id.* at 311.)

Plaintiff's chief complaint during the examination performed by Dr. Aguilar was PTSD. (AR 310.) Plaintiff reported that since the October 2011 traumatic event occurred, she had experienced "poor sleep, nightmares, nervousness, fearfulness, and depression." (*Id*. at 311.) She also stated that she "startles and feels a little paranoid," but denied hallucinations. (*Id*.) "She isolates herself sometimes and has low energy and low motivation and interest." (*Id*.) With respect to her medication, Plaintiff stated that she was initially prescribed Sertraline, but after a poor response, her "medication was changed to Fluoxetine, Trazodone, and Hydroxyzine." (*Id*.) "Plaintiff stated that the medications help a little." (*Id*.)

///

---

[2] A Global Assessment of Functioning (GAF) "score is the fifth level ("axis") of the DSM (IV) multiaxial classification. The Axis V -- GAF score is used for 'reporting the clinician's judgment of the individual's overall level of functioning.'" *Johnson v. Astrue*, No. CV 08-03878-CT, 2009 WL 82692, at *3 n.7 (C.D. Cal. Jan. 12, 2009) (quoting DSM-IV-TR, p. 32); *see also Craig v. Colvin*, 659 F. App'x 381, 382 n.1 (9th Cir. 2016) ("GAF scores reflect a clinician's 'rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.'") (quoting *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)).

Dr. Aguilar's mental status examination found that Plaintiff's mood was slightly depressed and her affect slightly constricted. (AR 312.) Dr. Aguilar assessed that Plaintiff was unlimited in her ability to follow simple and detailed instructions, interact with the public, coworkers and supervisors, to comply with job rules, and carry out daily activities. (*Id.* at 314.) Dr. Aguilar assessed Plaintiff as mildly limited in her ability to respond to changes in a routine work setting and ability to respond to work pressure in a usual working setting. (*Id.*) Plaintiff's prognosis was good with stabilization and psychotherapy. (*Id.*)

### 3. *State Agency Consultant Dr. Garland's Opinion*

State agency consultant Dr. Garland reviewed the medical files in Plaintiff's case, including Dr. Aguilar's examination report, and arrived at a different assessment from Dr. Aguilar's. (AR 72-80.) With respect to the "Paragraph B" criteria for evaluating mental impairments, Dr. Garland concluded that Plaintiff had mild limitations with respect to activities of daily living; moderate limitations in social functioning; moderate limitations in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. (*Id.* at 73.) Dr. Garland concluded that Dr. Aguilar's "MSS is underrestrictive relative to the evidence. Overall [Plaintiff] should be able to meet the basic mental demands of competitive, remunerative, unskilled work on a sustained basis, particularly in settings of social contact, including the abilities to understand, carry out, and remember simple instructions; make judgments commensurate with the functions of unskilled work, i.e., simple work-related decisions; respond appropriately to supervision, coworkers and work situations; & deal with changes in a routine work setting." (*Id.* at 77.)

### 4. *Plaintiff's Hearing Testimony*

At the March 16, 2015 administrative hearing held on Plaintiff's application, Plaintiff testified that she continued to take Trazodone as prescribed by Dr. Ton-That but could not take the prescribed antidepressant medication with her pain

5

medication (for back pain). (AR 39, 50.) At the hearing, Plaintiff described her PTSD symptoms as consisting of nightmares and having anxiety daily. (*Id*. at 48-49.) She reported flashbacks to the October 2011 event several times per week and nightmares three times per week. (*Id*. at 49.) She testified that she had trouble sleeping through the night. (*Id*. at 50.) Due to the PTSD, Plaintiff testified that she did not like to be around people and isolated herself. (*Id*.) She also testified that her PTSD symptoms affected her ability to communicate with strangers. (*Id*. at 51.)

B. ALJ's Decision

*1. Five-Step Sequential Evaluation*

On April 24, 2015, the ALJ found that Plaintiff was not disabled, pursuant to the Social Security Act,[3] from the alleged onset date through the date of the decision. *Id.* at 21. In reaching this decision, the ALJ followed the five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 3, 2013, the alleged onset date. AR 15. At **step two**, the ALJ found that Plaintiff has the following severe impairment: lumbar degenerative disc disease. *Id.* At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 17 (citations omitted). Before proceeding to **step four**, the ALJ found that Plaintiff possessed the residual functional capacity ("RFC") to

> [P]erform a range of light work as defined in 20 CFR 404.1567(b) and SSR 83-10 specifically as follows: [Plaintiff] can lift and/or carry at least 20 pounds occasionally and up to 10 pounds

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

> frequently; she can stand and/or walk for at least six hours out of an eight-hour workday; she can sit for at least six hours out of an eight-hour workday; and she can occasionally balance, climb, stoop, kneel, crawl, crouch, and us ladders, ropes and scaffolds.

*Id*. at 17. At **step four**, based on Plaintiff's RFC, and the testimony of the Vocational Expert (VE), the ALJ determined that Plaintiff could perform her past relevant work "as a hostess, real estate agent, census clerk, and census survey worker." *Id*. at 20.

### 2. *Step Two Severity Analysis*

As part of the analysis whether Plaintiff's PTSD was a severe impairment, the ALJ analyzed the four broad functional areas known as the Paragraph B criteria in determining whether her mental impairment was severe. The ALJ found mild limitations with respect to the first three areas – activities of daily living, social functioning, and concentration, persistence or pace. (AR 15.) With respect to the fourth area, the ALJ found no episodes of decompensation of extended duration. (*Id*. at 16.) Further, the ALJ stated that the "medical records also do not show objective evidence of disabling mental health condition." (*Id.*)

The ALJ's description of the medical evidence noted that Plaintiff did not seek mental health treatment for trauma related to the physical assault for almost one year after the incident. (AR 16.) The ALJ observed that, while a mental status examination showed that Plaintiff appeared anxious and had signs of mild depression, all other clinical signs were negative. (*Id.*) The ALJ also noted that Plaintiff was prescribed medications but went off of them for two months in April and July of 2013 and reported she was feeling better. (*Id.*) The ALJ listed Plaintiff's GAF score as remaining stable at 55, which indicated moderate symptoms. The ALJ noted that Dr. Aguilar's evaluation found Plaintiff's functional limitations ranged from mild to none from a psychiatric perspective, and Dr. Aguilar indicated a GAF score in the range of 65 to 70, reflecting mild

symptoms. (*Id.*) The ALJ also noted that the state agency mental health consultant disagreed with Dr. Aguilar's assessment and concluded Plaintiff had a severe mental impairment that caused moderate limitations on her functioning. (*Id.*)

After summarizing and describing the medical evidence, the ALJ assigned great weight to Dr. Aguilar's opinion and little weight to the state agency consultant's assessment. (AR 17.) The ALJ did so because Dr. Aguilar was an examining source and because Dr. Aguilar's opinion was consistent with the generally benign mental status examinations of Plaintiff throughout the record. (*Id.*)

### III.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible

to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.
## DISCUSSION

Plaintiff raises a single issue on appeal: whether the ALJ erred at step two of the five-step sequential evaluation process in finding that Plaintiff's PTSD was not a severe impairment. Joint Stipulation ("Joint Stip.") at 4, Dkt. No. 24.

The step two inquiry is meant to be a *de minimis* screening device. *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert,* 482 U.S. 137, 153–54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). At step two, the ALJ identifies a claimant's severe impairments, *i.e.*, impairments that significantly limit his or her ability to do basic work activities.[4] 20 C.F.R. § 404.1520(a)(4)(ii); *Smolen,* 80 F.3d at 1290. A determination that an impairment is not severe requires evaluation of medical findings describing the impairment, and an informed judgment as to its limiting effects on a claimant's ability to do basic work activities. Social Security Ruling ("SSR") 85–28, 1985 WL 56856, at *4 (Jan. 1, 1985).[5]

The ALJ must take into account subjective symptoms in assessing severity, *Smolen,* 80 F.3d at 1290, but "medical evidence alone is evaluated … to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28 at

---

[4] Basic work activities are "the abilities and aptitudes necessary to do most jobs[.]" 20 C.F.R. § 404.1521(b).

[5] SSRs do not have the force of law, but a reviewing court generally accords them some deference. *Holohan v. Massanari,* 246 F.3d 1195, 1202 n.1 (9th Cir. 2001).

9

*4. An impairment or combination thereof may properly be found not severe if the clearly established objective medical evidence shows only slight abnormalities that minimally affect a claimant's ability to do basic work activities. *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005); *Smolen,* 80 F.3d at 1290.

### A. The ALJ's Decision

The ALJ provided several reasons for concluding that Plaintiff's PTSD was a non-severe impairment. Several of these reasons mischaracterize facts or are legally untenable.

The ALJ pointed to the absence of any inpatient care or psychotherapy treatment of Plaintiff's PTSD as a factor in concluding that her PTSD was not a severe impairment. AR 17. "Inpatient psychiatric treatment is not a prerequisite to a finding of severity." *Cyprain v. Colvin*, Case No. 15-CV-02413-BAS-BGS, 2017 WL 908757, at *6 (S.D. Cal. Mar. 7, 2017). This is not a substantial reason for the ALJ's conclusion that Plaintiff's PTSD is not severe.

Next, the ALJ pointed to Plaintiff's hearing testimony at which Plaintiff testified that "she no longer takes antidepressants or antianxiety medication." AR 17. However, the excerpted portion of Plaintiff's testimony upon which this reason rests is incomplete. Plaintiff testified that she cannot take antidepressants with her pain medication. AR 39. Plaintiff further testified that, in light of this, her doctor (Dr. Ton-That) now prescribes Trazodone for her. *Id*. Later in her testimony, Plaintiff stated that she is not taking the medication that Dr. Ton-That has prescribed for her because it is not working, but the ALJ's decision failed to acknowledge that Plaintiff's decision to stop taking antidepressant medication was because she cannot take that medication while also taking pain medication. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ erred by not fully accounting for the context of materials or all parts of the testimony and reports; ALJ's "paraphrasing of record material is not entirely accurate regarding the content or tone of the record.") The ALJ's error in characterizing Plaintiff's

10

medication history detracts from his determination of non-severity.

The ALJ also noted that Plaintiff's "brief and conservative mental health treatment history" does not support her allegations. AR 17. While Plaintiff's treatment history may fairly be characterized as conservative, it was not brief. Dr. Ton-That's treatment records span the time period from August 2012 to October 20, 2014, over two years. As with Plaintiff's medication history, the ALJ's inaccurate characterization of the duration of Plaintiff's mental health treatment history undermines the conclusion of non-severity.

Also discussed in the ALJ's decision, and which the Court finds to be an insufficient reason, is the ALJ's adverse inverse from Plaintiff's one-year delay in seeking mental health treatment for the traumatic event that triggered her PTSD. AR 16. It was not reasonable for the ALJ in this case to construe Plaintiff's delay in seeking mental health treatment as a basis for finding her PTSD not severe. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).

Lastly, the ALJ observed that Plaintiff went off her medication for two months in April and July of 2013 and reported feeling better. AR 16. However, in discussing mental health issues, the Ninth Circuit has cautioned ALJs regarding making adverse inferences against claimants based on a "few instances of improvement over a period of months." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment"; "[c]ycles of improvement and debilitating symptoms are a common occurrence"). Accordingly, the Court finds this reason insufficient.

///

///

11

B. <u>Dr. Aguilar's Opinion</u>

In reaching the conclusion of non-severity, the ALJ gave great weight to consultative examiner Dr. Aguilar's opinion that Plaintiff was only mildly impaired. As noted above, Dr. Aguilar reached this opinion without the benefit of having reviewed Plaintiff's medical records. AR 311.

The Social Security Regulations state: If we arrange for [a consultative examination] or test, . . . [w]e will also give the examiner any necessary background information about your condition." 20 C.F.R. §§ 404.1517, 416.917. As noted in the cases cited by Plaintiff, Dr. Aguilar's opinion may not constitute substantial evidence because Dr. Aguilar did not review Plaintiff's medical record. *See Sloan v. Astrue*, No. CV 8-07479-MAN, 2009 WL 5184426, at *4 n.11 (C.D. Cal. Dec. 21, 2009) ("Critically, [the consultative examiner] did not review any of plaintiff's medical records. . . . Thus, it is unclear whether [the consultative examiner's] assessment of plaintiff is based on a sufficiently complete picture of plaintiff's condition. . . . As a result, [the consultative examiner's] opinion may not constitute substantial evidence.") (citing *Ladue v. Chater*, No. C-95-0754 EFL, 1996 WL 83880, at *5 (N.D. Cal. Feb. 16, 1996)).

At least two reasons call into question the reliability of Dr. Aguilar's opinion. First, Dr. Aguilar assessed Plaintiff with a GAF score of 65-70. AR 313. This score conflicts with the GAF score that Dr. Ton-That consistently assessed Plaintiff (a GAF score of 55) during the two years that he treated her for PTSD. Second, the state agency consultant concluded – after reviewing Plaintiff's medical records – that Dr. Aguilar's assessment was underrestrictive relative to the evidence. *Id.* at 77.

Because Dr. Aguilar's opinion is not informed by a review of Plaintiff's medical records, in combination with the other errors described above in the ALJ's analysis of Plaintiff's PTSD, the Court concludes that the ALJ's determination of non-severity lacks substantial evidence.

On this record, the Court finds that the step two error was not harmless and that remand is appropriate. As noted above, step two was resolved in Plaintiff's favor with the ALJ finding that Plaintiff's lumbar degenerative disc disease was a severe impairment. At step four, the ALJ concluded that Plaintiff could perform past relevant work. AR 20. As the Commissioner acknowledges and as demonstrated by the testimony of the VE (*see* AR 55-56), a finding of moderate limitations in social functioning and in concentration, persistence, and pace, would yield a finding that Plaintiff could not perform past relevant work and would have required the ALJ to proceed to step five. Joint Stip. at 11. In other words, if the ALJ had found Plaintiff's PTSD to be a severe impairment, then step four would have been resolved in Plaintiff's favor. Nevertheless, the Commissioner argues any error is harmless because the record establishes that there are jobs that Plaintiff could perform, even with the additional limitations resulting from her PTSD being considered, and thus step five would have been resolved against Plaintiff.

The Court disagrees. Because the ALJ did not incorporate limitations arising from Plaintiff's PTSD in the RFC, the five-step sequential evaluation process ended at step four and the ALJ opted not to make an alternative step-five determination. *See, e.g., Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (ALJ's step four determination constituted error, but was held harmless in light of ALJ's alternative finding at step five); *Reynolds v. Astrue*, 252 F. App'x 161, 165-66 (9th Cir. 2007) (ALJ's error at step four held harmless given ALJ's step-five determination, which was supported by substantial evidence). Because the ALJ ended the analysis at step four and did not make a step-five alternative finding that Plaintiff was capable of performing other jobs that existed in the national economy consistent with an RFC that incorporated limitations arising from her PTSD, the Court cannot find that that ALJ's non-severity finding was harmless on this record.[6]

---

[6] While the ALJ posed a hypothetical question to the VE involving an individual who could not have contact with the public and who could only have occasional

13

*See Lamb v. Colvin*, No. 1:13-cv-00137 GSA, 2014 WL 3894919, at *6-7 (E.D. Cal. Aug. 4, 2014) (where analysis ended at step four and no step-five findings were made, step-four error was not harmless).

Accordingly, the ALJ's step two error warrants reversal and remand. On remand, the ALJ must provide a consultative examiner with Plaintiff's medical records and, after receiving the consultative examiner's opinion, reevaluate whether Plaintiff's PTSD constitutes a severe impairment. If the ALJ determines that Plaintiff's PTSD is a severe impairment, then the ALJ must continue with the five-step sequential evaluation process.

## V.
## CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: September 25, 2017

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

---

contact with coworkers and supervisors, and the VE testified that such an individual could perform unskilled, light work (*see* AR 55-56), ultimately, the ALJ made no findings to this effect in his decision.

14